UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

R.M. RAILCARS LLC,

                         **Plaintiff,**

v.                                                                                              1:14-cv-01167 (BKS/RFT)

MARCELLUS ENERGY SERVICES, LLC,

                         **Defendant.**
_____

**APPEARANCES:**

*Attorney for Plaintiff*
William J. Keniry, Esq.
Tabner, Ryan and Keniry, LLP
18 Corporate Woods Boulevard
Albany, NY 12211-2605

**Hon. Brenda K. Sannes, United States District Court Judge:**

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

On September 22, 2014, plaintiff R.M. Railcars LLC filed this diversity action[1] against defendant Marcellus Energy Services, LLC asserting causes of action under New York State law for: 1) breach of contract; 2) account stated; 3) unjust enrichment; and 4) quantum meruit. (Dkt. No. 1). Plaintiff alleged that defendant had entered into a lease agreement for the use of plaintiff's railcars and failed to fulfill the terms of the lease and make certain required payments.

---

[1] Based on plaintiff's submissions (Dkt. No. 29) in response to the Order to Show Cause (Dkt. No. 28), which show that plaintiff's sole member is a citizen of New York and defendant's sole member is a citizen of Michigan, the Court finds that "the record as a whole, as supplemented, establishes the existence of the requisite diversity of citizenship between the parties," and deems the complaint (Dkt. No. 1), amended "so as to properly allege diversity jurisdiction." *Durant, Nichols, Houston, Hodgson & Cortese-Costa P.C. v. Dupont*, 565 F.3d 56, 64 (2d Cir. 2009) (internal quotation marks omitted).

(*Id*.). Defendant has not answered the complaint or otherwise appeared in this action. Plaintiff sought and obtained a clerk's entry of default, which was entered on December 29, 2014. (Dkt. No. 13).

Presently before the Court is plaintiff's motion under Rule 55(b) of the Federal Rules of Civil Procedure for default judgment. (Dkt. No. 15). On April 16, 2015, the Court granted plaintiff's motion for default judgment as to liability on the first cause of action for breach of contract, and denied plaintiff's request for default judgment as to liability on the second, third, and fourth causes of action for account stated, unjust enrichment, and quantum meruit. (Dkt. No. 19). The Court also denied without prejudice plaintiff's request for an award of $3,595,203.76 in damages and attorneys' fees and costs but scheduled a hearing to conduct an accounting in order to determine the amount of plaintiff's damages and attorneys' fees and costs. (*Id*.). On May 1, 2015, plaintiff filed a letter requesting that the hearing be adjourned and that plaintiff "be permitted to submit a supplemental affidavit authenticating the records submitted in support of its damages." (Dkt. No. 21). The Court granted plaintiff's request (Dkt. No. 22) and on May 15, 2015, plaintiff submitted supplemental affidavits and exhibits in support of its request for an award of $3,595,203.76 in damages and attorneys' fees and costs. (Dkt. Nos. 23-24). On May 22, 2015, the Court found that plaintiff's submissions "do not address what steps it undertook to mitigate damages." (Dkt. No. 25). The Court gave plaintiff another opportunity to submit admissible evidence in support of its request for damages, stating that "Plaintiff's request for unpaid amounts owed and liquidated damages will be denied unless Plaintiff submits evidence in admissible form, on or before June 5, 2015, regarding mitigation of damages." (*Id*.). On June 4, 2015, plaintiff submitted another affidavit and additional exhibits, along with a memorandum of law, in support of its request for damages. (Dkt. Nos. 26-27).

## II. DISCUSSION

### A. Damages

"[I]t is well established that '[w]hile a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (quoting *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir.1992)). On a motion for default judgment, a court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997)). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund*, 699 F.3d at 234 (citing Fed. R. Civ. P. 55(b)(2)). "Magistrate judges and district courts have interpreted this to mean that . . . damages must be based on admissible evidence." *House v. Kent Worldwide Mach. Works, Inc.*, 359 F. App'x 206, 207 (2d Cir. 2010).

Therefore, "a court may not rubber-stamp the non-defaulting party's damages calculation, but rather must ensure that there is a basis for the damages that are sought." *Overcash v. United Abstract Grp., Inc.*, 549 F. Supp. 2d 193, 196 (N.D.N.Y. 2008) (citing *Credit Lyonnais Sec. (USA), Inc. v. Alcantara,* 183 F.3d 151, 155 (2d Cir.1999)). In a breach of contract action, damages are generally limited to expectation damages – the amount necessary to put plaintiff in as good a position as if defendant had fulfilled the contract, plus consequential damages for other

3

losses caused by the breach. *Bausch & Lomb, Inc. v. Bressler*, 977 F.2d 720, 728 (2d Cir. 1992); *Wallace Steel, Inc. v. Ingersoll-Rand Co.,* 739 F.2d 112, 115 (2d Cir. 1984); Restatement (Second) of Contracts § 347 (1981).

Here, plaintiff seeks judgment in the amount of $3,595,203.76, which consists of: 1) $840,564.00 for unpaid amounts duly owed plaintiff for services rendered, 2) $2,748,827.56 in liquidated damages, and 3) $5,812.20 in attorneys' fees and costs. (Dkt. No. 17).

**1) Unpaid Amounts Owed for Services Rendered**

Plaintiff seeks to recover $840,564.00 in actual damages for amounts allegedly owed by defendant on unpaid invoices for services rendered by plaintiff. (Dkt. No. 17, ¶ 13; Dkt. No. 27, ¶ 24). Under the Master Lease Agreement, plaintiff is entitled to recover "any and all amounts which under the terms of this Lease Agreement may be then due or which may have accrued to the date of termination." (Dkt. No. 23-1, p. 9). Defendant agreed to rent 200 of plaintiff's railcars at the monthly rate of $465 per railcar. (Dkt. No. 23-2, p. 2). Between February 2013 and May 2014, defendant failed to take possession and make payment for 84 of the railcars, which also caused plaintiff to incur track storage fees. (Dkt. No. 23, ¶¶ 18, 30-90). At the agreed upon rate, defendant owed $39,060 each month for the 84 cars, for a total unpaid amount of $585,900. The Master Lease Agreement also states that defendant is "liable for any demurrage, track storage or detention charges imposed in connection with any of the Cars." (Dkt. No. 23-1, p. 3). Plaintiff's invoices and summary chart show that the track storage fees varied from $7,056 to $7,812 per month, for a total of $115,164. (Dkt. Nos. 23-3—23-17, 23-24). Plaintiff's invoices and summary chart also show that defendant failed to pay $11,625 of the $53,940 required monthly payment from June 2013 to May 2014 for the 116 railcars used by

4

defendant. (Dkt. Nos. 23-17, 23-24). The total shortfall for these months amounts to $139,500. Accordingly, the sum of the unpaid amounts owed by defendant to plaintiff is $840,564.00.

The Court finds that plaintiff is entitled to $139,500 in expectation damages as a result of defendant's breach of contract and underpayment for the 116 railcars used from June 2013 to May 2014. As to the unpaid $585,900 for the 84 unused railcars and attendant $115,164 in storage fees, before awarding damages, the Court must consider whether they are subject to mitigation. The record shows that plaintiff did not attempt to mitigate these damages by re-letting the 84 cars that defendant failed to take possession of and make payment for from February 2013 to May 2014; plaintiff instead stored these railcars. (*See* Dkt. Nos. 23-3—23-17, showing invoices for track storage fees relating to 84 railcars). "In a breach of contract action, a plaintiff ordinarily has a duty to mitigate the damages that [it] incurs. If the plaintiff fails to mitigate [its] damages, the defendant cannot be charged with them." *U.S. Bank Nat'l Ass'n v. Ables & Hall Builders*, 696 F. Supp. 2d 428, 440-441 (S.D.N.Y. 2010) (citing Restatement (Second) of Contracts § 350(1)); *see also Mack-Cali Realty, L.P. v. Everfoam Insulation Sys., Inc.*, 110 A.D.3d 680, 682 (N.Y. App. Div. 2d Dep't 2013) ("[T]he duty to mitigate damages arising from a breach of contract is a duty that arises from common law and, therefore, need not be expressly bargained for in a contract to be enforceable."). The duty to mitigate "applies to those damages that the plaintiff could have avoided with reasonable effort and without undue risk, burden, or expense." *U.S. Bank Nat'l Ass'n*, 696 F. Supp. 2d at 441.

Plaintiff argues that, as a commercial lessor doing business in New York, it had no duty to mitigate damages. (Dkt. No. 27, ¶ 1). However, the cases cited by plaintiff are inapposite as they apply to leases of real property. With respect to leases of personal property, courts have recognized that where a lessor has the ability to mitigate, the obligation to do so exists. *See, e.g.,*

5

*Execulease Corp. v. Afshari*, 227 A.D.2d 517, 642 N.Y.S.2d 944 (1996); *Vanguard Commercial Leasing Corp. v. Dayanzadeh*, 147 A.D.2d 557, 538 N.Y.S.2d 492 (1989); *Fairfield Leasing Corp. v. Commercial Pharmacy, Inc.*, 109 Misc. 2d 1072, 1073, 441 N.Y.S.2d 621 (Civ. Ct. 1981) *aff'd*, 117 Misc. 2d 304, 460 N.Y.S.2d 1023 (App. Term 1983).

Nonetheless, the Court finds that plaintiff did not have a duty to mitigate damages from February 2013 to May 2014—when plaintiff terminated the Master Lease Agreement due to defendant's continuing breach. "A duty to mitigate damages arises when (1) a contract is breached and (2) it appears that the breaching party has abandoned or repudiated his obligations under the contract." *United States v. Russell Elec. Co.*, 250 F. Supp. 2, 20 (S.D.N.Y. 1965). Thus, "[i]f negotiations between the parties are pending, if assurances are made that performance will be forthcoming, or if other circumstances indicate that the breaching party intends to perform, then, even though the contract has been breached, no duty to mitigate arises." *Id.*; *see also* 11-57 CORBIN ON CONTRACTS § 57.11 ("It is not necessary for the plaintiff to take steps to avoid losses, even though the defendant has actually committed a breach, so long as the breaching party has not definitely repudiated the contract and continues to assure the plaintiff that performance will take place.").

Under the circumstances, it was reasonable for plaintiff to store the 84 unused railcars because defendant had not repudiated the Master Lease Agreement—it continued to use and pay (most of the fees) for 116 of the 200 railcars. While plaintiff provided no evidence with respect to what if any negotiations took place about the remaining 84 railcars, or if defendant made any specific assurances that it would accept and pay for them, by performing a large part of its obligations under the contract, defendant gave plaintiff at least some assurance that it would honor the contract and cure the breach. *See Edward M. Crough, Inc. v. Dep't of Gen. Servs. of*

6

*D.C.*, 572 A.2d 457, 467 (D.C. 1990) ("The evidence suggests that Crough continued to perform its other obligations under the general contract, by which it gave assurance that it would continue to honor the contract.").

Moreover, plaintiff could not re-let the 84 unused railcars without first terminating the Master Lease Agreement—otherwise defendant could have later demanded those railcars, potentially leaving plaintiff in breach. Thus, although defendant partially breached the contract starting in February 2013, plaintiff reasonably continued to make the 84 railcars available and bill defendant monthly for their use and storage, affording defendant the opportunity to cure the breach and preserving the bulk of the contract business. Indeed, as late as April 28, 2014, plaintiff wrote to defendant requesting payment to "cure this default." (Dkt. No. 23-18). Plaintiff finally terminated the Master Lease Agreement in May 2014, after defendant continued to breach the Master Lease Agreement by not accepting and paying for the 84 railcars, and defendant's actions made reasonably clear that the breach would not be cured. Accordingly, plaintiff is entitled to $585,900 in additional expectation damages for the unpaid monthly fees for the 84 unused railcars, as well as $115,164 in consequential damages for the storage fees plaintiff incurred due to defendant's breach, with a combined total, including the $139,500 in underpayments for the 116 railcars, of $840,564.00 for unpaid amounts owed plaintiff for services rendered.

### 2) Liquidated Damages

Plaintiff also seeks an award of liquidated damages in the amount of $2,748,827.56. (Dkt. No. 27, ¶ 24). Pursuant to Section 14(b)(3)(a) of the Master Lease Agreement, plaintiff is entitled to recover:

> damages for loss of the bargain and not as a penalty sum, with respect to each Car which represents the then present value of all rent for such Car which would

> otherwise have accrued hereunder from the date of such termination to the end of the term of this Agreement as to such Car, such present value to be computed in each case on the basis of a six percent (6%) per annum discount, compounded annually from the respective dates upon which rents would have been payable hereunder had this Agreement not been terminated.

(Dkt. No. 23-1, p. 9). However, the Master Lease Agreement also states that, in the event defendant defaults on its obligations, plaintiff has the right to:

> Lease, sell or otherwise dispose of the Cars to such persons, at such price, rental or other consideration and for such period as Lessor shall elect. Lessor shall apply the proceeds from such leasing, sale or other disposition, less all costs and expenses incurred in the recovery, repair, storage, renting, sale or other disposition of such Cars (including costs and expenses in connection with any bankruptcy proceeding involving Lessee and/or the Cars, including relief from stay motions, cash collateral disputes, assumption/rejection motions and disputes concerning any proposed disclosure statement and plan proposed during any such bankruptcy proceeding) toward the payment of Lessee's obligations hereunder. Lessee shall remain liable for any deficiency.

(*See* Section 14(b)(4), Dkt. No. 23-1, p. 10). Thus, contrary to plaintiff's assertion that it had no duty to mitigate damages, the Master Lease Agreement expressly makes liquidated damages subject to mitigation. Plaintiff states that "[b]y the end of 2014, RMR had re-let all of the Cars that were capable of being re-let." (Dkt. No. 26, ¶ 27). According to the evidence plaintiff submitted, plaintiff re-let 196 of the 200 railcars originally leased to defendant (at $465 per railcar) at an average price of $448.98 per railcar, with the four other cars deemed unfit for rental and scrapped. (*Id.*, ¶¶ 28-29). Plaintiff argues that it is entitled to contractually bargained-for liquidated damages, and that defendant has failed to show that the liquidated damages clause is unreasonable. (Dkt. No. 27, p. 1). But the enforceability of the liquidated damages clause is not in dispute. Rather, the issue is the *amount of liquidated damages* recoverable under the Master Lease Agreement.

The Master Lease Agreement requires that plaintiff "apply the proceeds" from re-letting the 196 railcars and scrapping the four remaining railcars "toward the payment of Lessee's

8

obligations hereunder," less costs and expenses incurred in doing so. (Dkt. No. 23-1, p. 10). Plaintiff has not provided any calculation of this mitigated liquidated damages amount. Nor does plaintiff's general assertion that it re-let 196 of the railcars "by the end of 2014" allow the Court to calculate damages, since plaintiff terminated the Master Lease Agreement in May 2014.[2] Since plaintiff has failed to provide admissible evidence regarding when, specifically, it re-let the railcars, there is no basis for calculating the proceeds that must, under the terms of the Master Lease Agreement, "be applied toward payment of Lessee's obligations." Therefore, plaintiff's request for liquidated damages is denied.

### 3) Attorneys' Fees and Costs

Plaintiff also seeks to recover $5,812.20 in attorneys' fees and costs it incurred in connection with this action. (Dkt. No. 27, ¶ 26). Section 14(b)(3)(b) of the Master Lease Agreement states that "reasonable legal fees and other costs and expenses" are recoverable in the event plaintiff must seek relief due to defendant's default. (Dkt. No. 23-1, pp. 9-10). "In calculating attorney's fees, the district court must first determine the 'lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—which creates a presumptively reasonable fee.'" *Stanczyk v. City of New York*, 752 F.3d 273, 284 (2d Cir. 2014) (quoting *Millea v. Metro–N. R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (internal brackets omitted)). Thus, the Court requires information to enable it to determine "whether the requested hourly rate is 'presumptively reasonable' given the nature of the case and the work performed, the status, experience, and/or expertise of the individuals performing the work, and the prevailing rates of similarly-situated attorneys in the relevant legal community." *Bowen v. Stephenson*, No. 14 Civ. 229, 2014 WL 6610041, at *3, 2014 U.S. Dist. LEXIS 162641, at *7-8 (N.D.N.Y. Nov.

---

[2] The mitigated liquidated damages amount would also need to account for the amount recovered from scrapping the four railcars, as the Master Lease Agreement's liquidated damages clause deducts proceeds from "other disposition" of the railcars. (Dkt. No. 23-1, p. 10).

9

20, 2014) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 192-93 (2d Cir. 2008)). The Second Circuit has held that in calculating the presumptively reasonable fee, "courts should generally use the hourly rates employed in the district in which the reviewing court sits." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (citations and internal quotation marks omitted).

In support of its request, plaintiff has submitted two affidavits from its attorney, William J. Keniry (Dkt. Nos. 17, 24), as well as billing records (Dkt. Nos. 17-1, 24-1). According to his affidavit, Mr. Keniry is member of the law firm of Tabner, Ryan and Keniry, LLP, and the attorney responsible for reviewing and issuing invoices for the firm's work on behalf of plaintiff. (Dkt. No. 24, ¶ 1).

The affidavits and billing records show $4,969.70 in attorneys' fees and $842.50 in expenses, with a number of attorneys and paralegals working on the matter at different hourly rates, as follows[3]:

| Individual | Position | Hourly Rate | Hours | Total |
|---|---|---|---|---|
| William J. Keniry | Partner | $299.88 | .66 | $197.88 |
| Eric N. Dratler | Partner | $285.00 | .33 | $94.05 |
| Thomas R. Fallati | Partner | $274.88 | .66 | $181.42 |
| Derek D. Sellman | Associate (admitted 2013) | $245.00 (2015) $174.90 (2014) | 2.91 18.83 | $712.95 $3,293.37 |
| Michelle R. Laferriere | Paralegal | $123.88 (1/2015) $95.00 (2/2015) $74.95 (9/2014) | .67 1.50 1.67 | $83.00 $267.00 $125.17 |
| Jacque K. Vincent | Paralegal | $75.00 | 2.26 | $169.50 |

---

[3] Several of the billing rates identified in the Keniry affidavit do not correlate to the rates actually charged to plaintiff in the billing records. For example, Eric N. Dratler, a law firm partner, is said to have billed at $70.71 per hour on this matter, whereas the billing records show his rate to be $285.00 per hour. (Dkt. No. 24-1, p.3). Accordingly, the Court has calculated the fees requested using the rates in the billing records.

The Court has reviewed the billing records and finds the time billed by Tabner, Ryan and Keniry, LLP in connection with this matter to be reasonable. The hourly rates, however, require further discussion.

Courts in this district have previously held that the prevailing rates of what a reasonable, paying client would be willing to pay, were "$210 per hour for an experienced attorney, $150 per hour for an attorney with four or more years experience, $120 per hour for an attorney with less than four years experience, and $80 per hour for paralegals." *See Lewis v. City of Albany Police Dep't*, 554 F. Supp. 2d 297, 298-299 (N.D.N.Y. 2008) (citing *Picinich v. United Parcel Serv.*, No. 01 Civ. 1868, 2008 WL 1766746, at *2, 2008 U.S. Dist. LEXIS 30140, at *6, (N.D.N.Y. Apr. 14, 2008)). Recently, higher rates have been found to be appropriate. *See Zalewski v. T.P. Builders, Inc.*, No. 10 Civ. 876, 3, 2012 WL 5880327, at *3, 2012 U.S. Dist. LEXIS 166263, at *1 (N.D.N.Y. Nov. 21, 2012) ("Based on a review of other decisions on attorneys' fees in this District, the court concludes that, in this case, the following are reasonable rates: $275 per hour for partners; $200 per hour for an attorney with more than four years experience; $170 per hour for an attorney with less than four years experience; and $90 per hour for paralegals."); *see also Curves Int'l, Inc. v. Nash*, No. 11 Civ. 425, 2013 WL 3872832, at *5, 2013 U.S. Dist. LEXIS 104095 , at *16 (N.D.N.Y. July 25, 2013) (applying same rates).

After reviewing the billing records and considering the experience of the attorneys and all other relevant factors, the Court will apply the more recent rates, and the lodestar is thus calculated as follows:

| Individual | Position | Reasonable Rate | Hours | Reasonable Fees |
|---|---|---|---|---|
| William J. Keniry | Partner | $275.00 | .66 | $181.50 |
| Eric N. Dratler | Partner | $275.00 | .33 | $90.75 |

| Thomas R. Fallati | Partner | $275.00 | .66 | $181.50 |
| Derek D. Sellman | Associate (admitted 2013) | $170.00 | 21.74 | $3,695.80 |
| Michelle R. Laferriere | Paralegal | $90.00 | 3.84 | $345.60 |
| Jacque K. Vincent | Paralegal | $90.00 | 2.26 | $203.40 |

Accordingly, plaintiff is awarded a total of $4,698.55 in attorneys' fees.[4] Plaintiff has also requested $842.50 in related expenses. (Dkt. No. 24, ¶ 4). The billing records show these expenses consist of filing and service fees, and the Court finds them to be reasonable. Therefore, plaintiff is entitled to a total of $5,541.05 in attorneys' fees and costs.

### III. CONCLUSION

For these reasons, it is therefore

**ORDERED** that plaintiff's motion for default judgment (Dkt. No. 15) is **GRANTED** in part and **DENIED** in part; and it is further

**ORDERED** that plaintiff is awarded default judgment on the first cause of action for breach of contract against defendant for the sum of $846,105.05, representing $840,564 in actual damages, plus $5,541.05 in attorneys' fees and costs; and it is further

**ORDERED** that plaintiff's request for an award of $2,748,827.56 in liquidated damages is **DENIED** without prejudice; and it is further

**ORDERED** that plaintiff serve a copy of this Memorandum-Decision and Order on defendant and file a certificate of service; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**IT IS SO ORDERED.**

Dated: July 24, 2015
Syracuse, New York

Brenda K. Sannes
U.S. District Judge

---

[4] Although this amount is slightly less than the fees requested by plaintiff, the Court perceives no reason for a departure from the lodestar in this case.